Viviano, J.
This case involves two related statutory schemes: the William Van Regenmorter Crime Victim’s Rights Act (CVRA)[1] and Michigan’s general restitution statute.[2] The issue is whether these statutes authorize courts to order a defendant to pay restitution for the reasonable travel expenses that victims incur while securing their stolen property and attending restitution hearings. We conclude that the statutes do authorize such payments because they require courts to order full restitution, i.e., restitution that is complete and maximal. Therefore, in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals on this issue and remand this case to the Cheboygan Circuit Court for reinstatement of the original restitution order.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Defendant, Chad James Garrison, stole four snowmobiles and two trailers from vacation homes in Cheboygan County. He pleaded guilty to one count of larceny of property valued at $1,000 or more, but less than $20,000, in violation of MCL 750.356(1) and (3)(a), as a second-offense habitual offender. While the case was pending, the three victims of defendant’s theft traveled back and forth from their primary residences in order to secure their stolen property and attend a *366 restitution hearing. At the hearing, the victims testified that they had incurred travel expenses related to these trips in the cumulative amount of $1,125. The sentencing court included $977 of this amount in its restitution order over defense counsel’s objection.
Defendant appealed, and the Court of Appeals reversed the lower court on this issue. Relying on the reasoning of People v Jones,[3] the Court determined that neither the CVRA nor MCL 769.1a authorizes courts to include victims’ travel expenses in a restitution award.[4] The Court concluded that the sentencing court abused its discretion by doing so in this case.
Judge METER dissented from that portion of the majority opinion, arguing instead that, under MCL 780.766(2), sentencing courts have a statutory duty to make victims whole for the losses that criminals cause. Although the applicable restitution statutes do not include victims’ travel expenses in their lists of compensable losses, Judge METER did not view those lists as exhaustive because of the overarching duty created by MCL 780.766(2).[5]
The prosecution sought leave to appeal the Court of Appeals’ decision in this Court. On May 3, 2013, we ordered oral argument on the prosecution’s application pursuant to MCR 7.302(H)(1).[6]
II. STANDARD OF REVIEW
This case presents a question of statutory interpretation. We review such questions de novo.[7] We review *367 the sentencing court’s factual findings for clear error.[8]
III. ANALYSIS
Our goal in interpreting a statute is to give effect to the intent of the Legislature as expressed in the statute’s language.[9] Absent ambiguity, we assume that the Legislature intended for the words in the statute to be given their plain meaning, and we enforce the statute as written.[10]
There are two main statutes that govern restitution in Michigan: MCL 780.766 (part of the CVRA)[11] and MCL 769.1a (the general restitution statute). Both statutes begin by defining “victim” as “an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime.”[12] The statutes then declare that sentencing courts “shall order” a defendant convicted of a crime to “make full restitution to any victim of the defendant’s course of conduct that gives rise to the conviction or to the victim’s estate.”[13] Several following subsections in the statutes go on to provide detailed instructions *368 regarding how to calculate restitution for various types of injuries. Subsection (3) of each statute[14] pertains to property loss; Subsection (4) of each statute[15] pertains to a victim’s physical or psychological injury, and Subsection (5) of each statute[16] also pertains to bodily injury, including death.
We begin our analysis by focusing on the statutes’ requirement that sentencing courts order “full restitution.”[17] The statutes do not define “full restitution,” but the plain meaning of the word “full” is “complete; entire; maximum[.]”[18] Hence, both restitution statutes impose a duty on sentencing courts to order defendants to pay restitution that is maximal and complete.
The CVRA and Article 1, § 24 of Michigan’s Constitution were enacted as part of a movement intended to balance the rights of crime victims and the rights of criminal defendants.[19] One aim of these laws was “to enable victims to be compensated fairly for their suffering at the hands of convicted offenders.”[20] The Legislature’s statutory direction to order defendants to pay complete, entire, and maximum restitution effectuates this goal of fair compensation.
We acknowledge that in both MCL 780.766(3) and MCL 769.1a(3), the Legislature gave specific instructions to sentencing courts regarding what must be *369 included in a restitution order when a crime “results in damage to or loss or destruction of property of a victim” and that these subsections do not mention victims’ travel expenses. However, this does not alter our conclusion that sentencing courts are authorized to include such costs in restitution awards. We read Subsections (3) of MCL 780.766 and MCL 769.1a as complementary to the broad mandate for complete restitution set out in their respective prior subsections, not contradictory. Subsections (3) tell courts how to evaluate specific types of losses when they occur. But nothing in the text of the statutes indicates that courts may only award restitution for the types of losses described in those subsections.[21] On the contrary, as explained above, the Legislature unambiguously instructed courts to order restitution that is “full,” which means complete and maximal. Therefore, we conclude that these subsections *370 do not contain an exhaustive list of all types of restitution available under Michigan law for victims who suffer property damage or loss.
Our conclusion that Subsections (3) to (5) are not exhaustive is also consistent with the CVRA’s definition of “victim” for purposes of restitution, which includes those who suffer financial harm as the result of the commission of a crime.[22] Not all crime victims suffer property damage, personal injury, or death. But many of these otherwise unharmed victims must travel to reclaim property, identify perpetrators, or otherwise participate in the investigatory process in the aftermath of a crime. These travels impose a real financial burden on victims in the form of transportation expenses. If we treated Subsections (3) to (5) as excluding those losses, we would not give effect to the connection that the Legislature made between the financial harm that a person suffers and that person’s status as a victim within the provisions of the CVRA.
The dissent argues that “ [i]t would have been pointless for the Legislature to have gone through this additional effort to provide specific guidance concerning restitutable costs” if the Legislature had already given sentencing courts broad authority to award restitution for any actual losses by using the words “full restitution.” We disagree. Even in view of the broad grant of authority from Subsection (2) of MCL 780.766 and MCL 769.1a, the specific instructions in Subsections (3) and following subsections prevent courts from overlooking common types of losses. They also promote consistency among different courts and cases by ensuring that judges use the same criteria when calculating the value of these key losses. Hence, our interpretation of the *371 statutes does not make Subsections (3) and following “pointless.”[23]
In reaching this conclusion, we are mindful of MCL 780.766b, which expressly authorizes courts to order defendants convicted of human-trafficking offenses to pay restitution for transportation costs incurred by victims.[24] The dissent posits that because the Legislature thought it was necessary to mention transportation costs in the human-trafficking statute, it must not have thought that the other restitution statutes authorized courts to order restitution for those expenses. However, a closer reading of MCL 780.766b shows that this is not so. MCL 780.766b(c)(i) and (ii) authorize courts to order restitution for lost wages and child-care expenses in human-trafficking cases, but those same expenses were already authorized under MCL 780.766(4)(c) and (e) for any crime that causes physical or psychological injury.[25] Hence, the Legislature was not expanding the restitution authority of sentencing courts in MCL 780.766b. Instead, it appears the Legislature was ensuring that sentencing courts did not overlook types of losses that were likely to be common in the human-trafficking context.
*372 We are likewise unpersuaded by the dissent’s use of the canon expressio unius est exclusio alterius, which states that the express mention of one thing implies the exclusion of other similar things.[26] The statute does not entitle the parents of victims or third parties who help victims to “full restitution,” so it makes sense to read the lists of possible restitution awards for those parties as exclusive in relation to those parties. By contrast, the Legislature did provide a broad restitution mandate for victims, declaring that courts must order defendants to pay them full restitution, i.e., restitution that is complete and maximal. To read the Legislature’s lists regarding third-party expenses as a limit on the restitution to which victims are entitled would allow the canon of expressio unius to overcome the plain meaning of the words in MCL 780.766(2). In other words, the dissent’s interpretation would mean that third parties could recover restitution for transportation expenses, but that victims, who are entitled to “full restitution,” could not.
Although courts must order defendants to pay “full restitution,” their authority to order restitution is not limitless. The statute authorizes restitution only for damage or loss that results from a “defendant’s course of conduct that gives rise to the conviction . . . .”[27] This is in keeping with the statute’s definition of “victim” as “an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime.”[28] Thus, the losses included in a restitution order must be the result of defendant’s criminal course of conduct.
In this case, the Court of Appeals relied on Jones for the proposition that “neither MCL 769.1a nor the *373 CVRA, MCL 780.766, authorizes the sentencing court to order a defendant to pay restitution to reimburse the victim for traveling expenses.”[29] The Court of Appeals erred by relying on Jones because the law has changed since 1988, when Jones was decided. At that time, a victim’s right to restitution was not yet enshrined in our state’s Constitution. In addition, the version of MCL 780.766 in effect when Jones committed his crime stated that a sentencing court “may order . . . that the defendant make restitution . . . .”[30] Likewise, the prior version of MCL 769.1a stated that sentencing courts “may order... a person convicted of any felony or misdemeanor to make full or partial restitution .. . .”[31] Thus, sentencing courts used to have discretion regarding whether to order restitution at all and, if so, in what amount. Now, both statutes state that sentencing courts “shall order. . . full restitution.” Hence, since Jones, the Legislature has decided that ordering restitution is mandatory, not discretionary, and that a restitution order must reflect the total amount of loss caused by a defendant’s criminal conduct, not some lesser amount that a sentencing court might feel is appropriate. The Court of Appeals erred in this case by relying on precedent that did not account for these important changes in the governing statutes.
IV APPLICATION
In this case, the victims’ immediate need to recover their property, inventory their losses, and explain their *374 losses in court was a natural consequence of defendant’s criminal activity. Hence, their travel expenses were a direct result of defendant’s criminal course of conduct. The sentencing court’s decision to include these expenses in its restitution order was in keeping with its statutory duty to order defendant to pay “full restitution.”
At the restitution hearing, the three victims testified that defendant’s theft forced them to travel a combined distance of 2,250 miles to secure their property and attend the restitution hearing. They multiplied this number by a fiat rate of 50 cents a mile, making their total travel-expenses claim $1,125. The court apparently discredited some portion of the victims’ testimony, but found the rest believable, and included $977 of the claimed $1,125 in its restitution order. Defendant does not identify any evidence that shows that the sentencing court’s factual finding was clearly erroneous.[32] Therefore, the Court of Appeals erred by reversing the sentencing court and remanding this case for a redetermination of restitution.
V CONCLUSION
Consistent with its statutory duty to order “full restitution,” the sentencing court in this case properly included the victims’ travel expenses in its restitution order. Accordingly, in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals on this issue and remand this case to the Cheboygan Circuit Court for reinstatement of the original restitution order.
Young, C.J., and Cavanagh, Kelly, and Zahra, JJ., concurred with Viviano, J.

 MCL 780.751 et seq.

 MCL 769.1a

 People v Jones, 168 Mich App 191; 423 NW2d 614 (1988).

 People v Garrison, unpublished opinion per curiam of the Court of Appeals, issued December 20, 2012 (Docket No. 307102), p 2.

 Id. at 1-2 (Meter, J., dissenting).

 People v Garrison, 493 Mich 1015 (2013).

 People v Kolanek, 491 Mich 382, 393; 817 NW2d 528 (2012).

 People v Osantowski, 481 Mich 103, 111; 748 NW2d 799 (2008).

 See People v Morey, 461 Mich 325, 330; 603 NW2d 250 (1999).

 People v Koonce, 466 Mich 515, 518; 648 NW2d 153 (2002).

 The CVRA is divided into three articles. Article 1, MCL 780.751 through MCL 780.775, addresses felony convictions and contains the provision at issue in this case. Article 2, MCL 780.781 through MCL 780.802, addresses various juvenile offenses, and Article 3, MCL 780.811 through MCL 780.834, addresses convictions for various misdemeanors. MCL 780.794(2) and MCL 780.826(2) have language regarding restitution similar to that in MCL 780.766(2).

 MCL 780.766(1) (emphasis added). As used in MCL 780.766, “crime” means a felony. MCL 780.752(l)(b). See note 11 of this opinion. MCL 769.1a replaces the word “crime” with the words “felony, misdemeanor, or ordinance violation.” MCL 769.1a(l)(b).

 MCL 769.1a(2); MCL 780.766(2).

 MCL 769.1a(3); MCL 780.766(3).

 MCL 769.1a(4); MCL 780.766(4).

 MCL 780.766(5) refers to a bodily injury that results in death or serious impairment of a body function, while MCL 769.1a(5) refers to only the former.

 MCL 769.1a(2); MCL 780.766(2).

 Random House Webster’s College Dictionary (2001).

 See Van Regenmorter, Crime Victims’ Rights — A Legislative Perspective, 17 Pepperdine L R 59, 77 (1989).

 People v Peters, 449 Mich 515, 526; 537 NW2d 160 (1995).

 The dissent disagrees, arguing, “If ‘full restitution’ simply means restitution that is ‘maximal and complete,’ without reference to the adjacent statutory language purporting to define the term, there would have been no need for the Legislature to further specify [at the end of Subsection (2) of MCL 780.766] that courts shall order the restitution required ‘under this section.’ ”
We find this argument unpersuasive. In full, the sentence that contains the phrase on which the dissent relies reads as follows: "For an offense that is resolved by assignment of the defendant to youthful trainee status, by a delayed sentence or deferred judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall order the restitution required under this section.” MCL 780.766(2). This sentence makes it clear that courts must order “full restitution” even in certain cases in which the defendant has not been convicted of a crime. It does not state that sentencing courts may order only the specific restitution described in Subsections (3), (4), and (5).
Furthermore, the subsection that follows in the statute begins with language that is permissive, not restrictive. It states that a court shall require a defendant to do “1 or more of the following, as applicable[.]” MCL 780.766(3); MCL 769.1a(3) (providing that the court “may require that the defendant do 1 or more of the following, as applicable”). It does not state that a court may include only those amounts.

 MCL 780.766(1).

 The dissent takes issue with our conclusion that the statute “means that ‘full restitution’ must be awarded.” This is curious because the CVRA itself declares that the “court shall order ... that the defendant make full restitution . .. .” MCL 780.766(2). In holding that this statute actually means what it says, we give effect to the intent of the Legislature.

 MCL 780.766b(c)(iii).

 See MCL 780.766(4)(c) (authorizing courts to order the defendant to “[rjeimburse the victim or the victim’s estate for after-tax income loss suffered by the victim as a result of the crime”) and MCL 780.766(4)(e) (authorizing courts to order the defendant to “[play an amount equal to the reasonably determined costs of homemaking and child care expenses actually incurred and reasonably expected to be incurred as a result of the crime”).

 Bianchi v Auto Club of Mich, 437 Mich 65, 72; 467 NW2d 17 (1991).

 MCL 780.766(2).

 MCL 780.766(1) (emphasis added).

 Garrison, unpub op at 2.

 MCL 780.766(2), as enacted by 1985 PA 87 (emphasis added). “May” was changed to “shall” by 1993 PA 341.

 MCL 769.1a(l), as added by 1985 PA 89 (emphasis added). “May” was changed to “shall” by 1993 PA 343. The reference to “partial” restitution was deleted by 1996 PA 560.

 People v Armstrong, 490 Mich 281, 289; 806 NW2d 676 (2011).