*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JONATHAN DAVID HENNESSEE,

        Defendant-Appellant.

UNPUBLISHED
September 12, 2025
3:21 PM

No. 372032
Berrien Circuit Court
LC No. 2022-003013-FH

Before: SWARTZLE, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

Defendant, Jonathan David Hennessee, pleaded guilty to malicious destruction of property worth $1,000 or more but less than $20,000, MCL 750.377a(1)(b)(*i*), and agreed to pay restitution. After several hearings, the trial court ordered him to pay restitution in the amounts of $37,900 and $171,619.75. On appeal by leave granted,[1] we affirm the $37,900 restitution order, but vacate the $171,619.75 restitution order and remand the case for further proceedings on that matter.

## I. FACTUAL BACKGROUND

Lester and Tracy Mervine kept most of their belongings in a storage unit at M-139 Storage, LLC. On August 7, 2022, they opened their storage unit to find some of their possessions missing or broken, with no signs of forced entry. They discovered that a plywood door-like panel had been installed in the wall separating their storage unit from another storage unit. They called the police, and a Berrien County Sheriff's deputy was dispatched on August 9, 2022. The deputy saw through a gap above the adjoining wall that some of the Mervines' property was in the neighboring storage unit, which belonged to defendant. The deputy contacted defendant, who suggested the Mervines could take any items they believed belonged to them, and that his fingerprints and DNA would not be found on those items. The next day at 5:30 a.m., the storage units were set on fire, which caused significant damage to the entire storage building. Defendant volunteered that his girlfriend, Jenna

---

[1] *People v Hennessee*, unpublished order of the Court of Appeals, entered October 9, 2024 (Docket No. 372032).

Boelcke, had hired Damien Kaiser to set the fire. Kaiser testified at a preliminary examination in this matter that both defendant and Boelcke instructed him to set the fire inside defendant's storage unit to conceal the stolen items. After entering into a plea agreement, defendant pleaded guilty to malicious destruction of property and was sentenced to serve a jail term.

At a series of restitution hearings, it was established that the Mervines' destroyed property was valued at $37,900, so the trial court ordered defendant to pay that amount. The trial court also found that the loss suffered by Farm Bureau Insurance—which compensated M-139 Storage, LLC, as their insured, for fire and water damage to the storage facility—totaled $171,619.75, so the trial court ordered defendant to pay that amount of restitution as well. The evidence, however, revealed that Farm Bureau paid M-139 Storage, LLC, the maximum coverage allowed under the insurance policy, i.e., $154,800. Defendant now contests the amount of restitution he was ordered to pay.

## II. LEGAL ANALYSIS

Defendant challenges the restitution that he was ordered to pay to the Mervines and to Farm Bureau. First, defendant asserts that the trial court erred by basing its findings upon the testimony of an employee of M-139 Storage, LLC, who did not possess first-hand knowledge of the damage and the necessary repairs to the storage-unit building, a claims adjuster from Farm Bureau, whose testimony allegedly lacked sufficient specificity, and Lester Mervine. Defendant insists that those witnesses' testimony amounted to impermissible speculation. Second, defendant contends that the trial court erred by making the restitution due to Farm Bureau payable by only two defendants, not including Kaiser, who started the fire. Defendant requests that this matter be remanded for another restitution hearing.

Application of "statutes authorizing the assessment of restitution at sentencing is a matter of statutory interpretation, which we review de novo." *People v McKinley*, 496 Mich 410, 414; 852 NW2d 770 (2014). "We review a court's calculation of a restitution amount for an abuse of discretion, and its factual findings for clear error." *People v Corbin*, 312 Mich App 352, 361; 880 NW2d 2 (2015) (quotation marks and citations omitted). The William Van Regenmorter Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*., directs a sentencing court to order a convicted defendant to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction[.]" MCL 780.766(2). But MCL 780.766(2) only authorizes the assessment of restitution for "any victim of the defendant's course of conduct that gives rise to the conviction," which is limited to "crimes for which a defendant is charged" and requires "a causal link" and "a victim for whom restitution is assessed [to] have a connection to the course of conduct that gives rise to the conviction." *McKinley*, 496 Mich at 420. Pursuant to MCL 780.766(1), "[a] victim is 'an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime.' " *Corbin*, 312 Mich App at 359. The general restitution statute, MCL 769.1a, "defines 'victim' in essentially the same fashion," listing "individuals harmed 'as a result of the commission of a felony, misdemeanor, or ordinance violation.' " *Id*. at 359-360, quoting MCL 769.1a(1)(b). Like the CVRA, the general restitution statute tells sentencing courts to "order restitution when appropriate." *Corbin*, 312 Mich App at 360. Despite some differences between the two statutes, both mandate restitution, and, under the CVRA, the prosecution must demonstrate "the amount of the victim's loss, and the [trial] court must resolve any dispute regarding the proper amount of restitution, by a preponderance of the evidence." *People v Bentley*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364303); slip op at 5.

The standard for calculating restitution according to the CVRA is "reasonableness," which does not require "absolute precision, mathematical certainty, or a crystal ball[,]" but "speculative or conjectural losses are not reasonably expected to be incurred[,]" *Corbin*, 312 Mich App at 365 (quotation marks and citations omitted), and therefore not properly awarded as restitution. "When determining the amount of restitution to award a victim, the focus is consistently not on what a defendant took, but what a victim lost because of the defendant's criminal activity." *In re White*, 330 Mich App 476, 483; 948 NW2d 643 (2019) (quotation marks and citation omitted). "[N]either the CVRA nor the general restitution statute define 'full restitution,' but under the plain meaning of the word 'full,' both statutes 'impose a duty on sentencing courts to order defendants to pay restitution that is maximal and complete.' " *Bentley*, ___ Mich App at ___; slip op at 5, quoting *People v Garrison*, 495 Mich 362, 368; 852 NW2d 45 (2014). A court may not order restitution for losses covered by insurance, *Corbin*, 312 Mich App at 360, and a restitution order must reflect the actual losses suffered by the victim. *People v Fawaz*, 299 Mich App 55, 65; 829 NW2d 259 (2012). Restitution shall be ordered to any entity that compensated the victim, such as an insurance company, "for a loss incurred by the victim to the extent of the compensation paid for that loss," plus "the costs of services provided . . . to the victim as a result of the crime." MCL 780.766(8). As this Court has noted:

> compensating a victim for his or her loss encompasses more than simply returning lost or stolen property. Rather, restitution can be awarded for other types of losses, such as compensation for the time it takes employees to take inventory and reequip trucks stolen by a defendant, lost profits, or the value of time and resources spent investigating a fraudulent insurance claim. A restitution award can also include interest. Such forms of restitution are awarded to make victims as whole as they can be and to fully compensate them for their losses. [*In re White*, 330 Mich App at 483-484 (quotation marks and citations omitted).]

We can easily affirm the restitution award of $37,900 payable to the Mervines. During the restitution hearing, Lester Mervine testified that most of the Mervines' possessions, including their refrigerators, stoves, couches, baby clothes, and hand-me-downs from his great-grandfather, were in the storage unit because the Mervines had recently moved. Lester Mervine estimated that those possessions were worth approximately $37,900. He arrived at that amount by seeking comparable replacement values, which he derived by going to stores and finding similar pieces of furniture or appliances that were the same make and model, as well as conducting online searches for the values of older items. The trial court did not err by relying upon Lester Mervine's testimony to impose a restitution obligation of $37,900. *Corbin*, 312 Mich App at 365 ("Where the evidence provides a reasonably certain factual foundation for a restitution amount, the statutory standard is met."). And defendant cannot complain that he was treated differently than Kaiser with regard to restitution for the Mervines because Kaiser similarly was ordered to pay the Mervines $32,100 in restitution. As a result, we affirm the restitution order directing defendant to pay the Mervines $37,900.

In contrast, the restitution award of $171,619.75 to Farm Bureau raises several complicated issues. The trial court heard testimony from an employee of M-139 Storage, LLC, about the extent of the damage caused by the fire and smoke, as well as damage from the water required to put out that fire. Estimated repairs included roof replacement, plumbing repairs, replaced flooring and drywall, painting, and replacing the garage doors for the storage units. Quotes were obtained from contractors, and a certified public accountant calculated the amount of lost business income. Those

amounts and supporting documentation were all furnished to Farm Bureau. Testimony from a restitution specialist at a third-party subrogation agency established that she prepared a report and concluded that the damages were valued at $171,619.75. Defendant disputed that all of the garage doors had to be replaced, but testimony established that it would be cheaper to replace them, rather than clean them, because of the smoke damage to the doors' interior cores. A claims adjuster from Farm Bureau testified that the total amount of property loss or damage approved for payment by Farm Bureau was the maximum amount allowed under the policy, i.e., $154,800.

Defendant describes the amount of restitution as based on speculation, and he disputes that the garage doors required replacing. But testimony was presented to establish the amount of loss, and the claims adjuster for Farm Bureau stated that smoke damage was caused to the interior core of overhead garage-style doors, and that, in a discussion he had with a licensed contractor from a restoration company, it was determined that replacing the doors would be cheaper than attempting to clean them. Thus, the trial court did not abuse its discretion, nor did it clearly err in its factual findings, when it concluded that M-139 Storage, LLC suffered a total loss of $171,619.75. *Corbin*, 312 Mich App at 361.

However, MCL 780.766(8) limits the amount of restitution that a trial court may award to an entity, like an insurance company, which has compensated a victim "for a loss incurred by the victim to the extent of the compensation paid for that loss," plus "the costs of services provided . . . to the victim as a result of the crime." The record reflects that Farm Bureau compensated M-139 Storage, LLC—a victim in this matter—the maximum amount allowed under its insurance policy, which was $154,800, yet Farm Bureau sought $171,619.75 in restitution. The trial court erred as a matter of law by ordering that amount of restitution payable to Farm Bureau because it exceeded the compensation and expenses Farm Bureau incurred, and therefore violated MCL 780.766(8). It may well be that the difference between the $171,619.75 restitution award payable to Farm Bureau and the payment of $154,800 by Farm Bureau as the maximum amount under the insurance policy should be awarded as payment to a different victim, such as M-139 Storage, LLC, or even to Farm Bureau, but we cannot ascertain on the existing record how much of that differential may be treated as a restitution obligation payable to a victim of the crime. Hence, we vacate the trial court's order of $171,619.75 in restitution payable to Farm Bureau, and we remand for consideration of whether Farm Bureau or some other victim is entitled to restitution above the amount of $154,800.

Finally, defendant insists that the restitution to Farm Bureau should have also been imposed upon Kaiser, who set the fire. Restitution to Farm Bureau was imposed on defendant and Boelcke, jointly and severally, but not on Kaiser. Based on the prosecution's request, the trial court joined the criminal cases against defendant and Boelcke, but Kaiser's case was not joined with theirs, and Kaiser and Boelcke are not parties to this appeal.[2] This Court has held that a trial court may impose the entire restitution amount on a defendant, regardless of that defendant's "degree of participation in the crime." *People v Foster*, 319 Mich App 365, 387; 901 NW2d 127 (2017). Also, as part of his plea agreement, defendant agreed to pay restitution, even though the amount of that restitution

---

[2] This Court denied Boelcke's application for leave to appeal, which did not present any challenge to the restitution award. *People v Boelcke*, unpublished order of the Court of Appeals, entered May 29, 2025 (Docket No. 375458).

could not be determined until the trial court conducted a restitution hearing. Defendant complains that Kaiser was not assigned his fair share of the restitution obligation, but we lack the authority to increase the restitution obligation of a party not involved in the appeal. Consequently, we reject defendant's invitation to impose an increased restitution obligation upon Kaiser.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates